UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| VS. | ) | CR No. 16-111 S |
| | ) | |
| RAFAEL LEAL | ) | |

_____

SENTENCING MEMORANDUM

Mr. Leal requests that the Court impose the 10 year statutory mandatory minimum sentence upon him. Mr. Leal does not dispute that his conduct was serious and that he is deserving of a significant penalty. The statute and the sentencing guidelines, however, overstate the true seriousness of this crime. The mandatory 10 year prison sentence well provides for significant punishment in compliance with 18 U.S.C. § 3553(a).

I.  Rafael Leal

Mr. Leal is a citizen of Brazil. He came to the United States to take advantage of the available economic opportunities to better his life. He first immigrated with his sister in 2001. He lived with her and cousins at first as he tried to build a foundation. He worked consistently from the time he arrived until the time of his arrest. For more than 10 years he worked as a baker for Dunkin Donuts at various locations in Massachusetts. He last worked at Clean Harbors as a field technician cleaning up polluted areas and toxic spills.

Mr. Leal has been married to his wife for more than 10 years. They have two daughters. He also has a son with another woman. Mr. Leal has not had the best

1

marriage and has not been the best husband. He has, however, been a good father and loves his children very much. He realizes that he will likely be deported after he serves his sentence and he regrets that he will be separated from his children.

Mr. Leal also greatly regrets the relationship he had with the complaining witness in this matter. He knows he was the adult in the situation and should not have engaged in this conduct. He has had months to think about his behavior, how he has affected his children, and how he has affected the young girl involved and her family. He realizes that he has two daughter of his own and that he would not feel very well about either of them engaging in a relationship with a man of his age. He knows that he cannot undo what has happened, but he is sincerely sorry for his actions.

II. Enticement and Coercion Penalties

Mr. Leal pled guilty to a violation of 18 U.S.C. § 2422(b); the statute entitled Enticement and Coercion. Subsection (b) makes it illegal to act in a manner which effects interstate commerce and results in engaging a minor in particular sexual activity. A defendant's culpable manner can be anything from suggestive to forceful as long as it results in illegal sexual activity including prostitution, rape, or statutory rape. Regardless of the wide range of culpable conduct, the statute carries the severe minimum penalty of 10 years in prison. 18 U.S.C. § 2422(b).

This statute, however, did not always carry such a severe sentence. Before 1996 the enticement statute read very differently.[1] It did not differentiate between adult and minor victims and it carried a *maximum* penalty of 5 years in prison. 18 U.S.C. § 2422 (1992). The penalty for conduct under this statute is now dealt with far more harshly. Over time it has changed as follows:

---

[1] "Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 2422 (1992).

2

- Through 1995, § 2422           up to 5 years in prison;
- 1996-1997, § 2422(b)           up to 10 years in prison;
- 1998-2002, § 2422(b)           up to 15 years in prison;
- 2003-2006, § 2422(b)           5 years in prison up to 30 years in prison;
- 2006 to present, § 2422(b)     10 years in prison up to life.

The 1996 change created sub section (b) with an increased penalty for offenses involving minors. The 1998 change simply raised the maximum penalty.

In 2003 Congress passed the PROTECT Act ("Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today"). The PROTECT Act was a far reaching law with the stated purpose of preventing the sexual abuse of children. 108 P.L. 21 (2003). The act created the mandatory minimum sentence of 5 years in prison for violating § 2422(b), and raised the maximum sentence to 30 years in prison. 108 P.L. 21, § 103(a)(2)(B) & (B)(2)(A). According to the government, this part of the act addressed the *problem* that federal law did not adequately punish sex offenders. Department of Justice Fact Sheet #266, "PROTECT Act of 2003" (April 30, 2003) ("Problem #2"). That perceived problem, however, is not mentioned in the act.

In 2006, Congress again passed a far reaching law intended to "protect children from sexual exploitation and violent crime". Adam Walsh Child Protection and Safety Act of 2006 ("AWA"), 109 P.L. 248 (2006). While the AWA is notable for including the Sex Offender Registration and Notification Act ("SORNA") to standardize sex offender registration nation-wide, it also increased the penalty under § 2422(b) to its present mandatory minimum sentence of 10 years in prison. 109 P.L. 248, § 204. Again, the AWA did not mention the inadequacy of the previous penalty.

III. Sentencing Guidelines
   a. Advisory Sentencing Range

The advisory sentencing range in the pre-sentence report is 188 to 235 months in prison. PSR ¶ 77. Mr. Leal has no criminal history. PSR ¶ 42. He has an offense level of 36. PSR ¶ 39. The calculation starts at level 28, with a 2 level enhancement for computer use, a 2 level enhancement for undue influence, a 2 level enhancement for sexual contact, and a 5 level upward adjustment for a pattern of sexual misconduct. PSR ¶¶ 28-36. The guideline calculation is correct, but results in a grossly unreasonable sentencing range.

b. Sentencing Guidelines

The guideline range for an offense under 18 U.S.C. § 2422(b) has risen dramatically since the original guidelines in 1987. For Mr. Leal, his guideline range would have varied greatly over the years as shown on left below:

- 1987, OL 12          U.S.S.G. § 2G1.1;
- 1990, OL 14          U.S.S.G. § 2G1.1;
    - OL 16            U.S.S.G. § 2G1.2, a;
- 1997, OL 21          U.S.S.G. § 2G1.1, a;
    - OL 15            x-ref to § 2A3.2;
- 2000, OL 23          U.S.S.G. § 2G1.1, a, c;
    - OL 22            x-ref to § 2A3.2, u, c;
- 2001, OL 23          U.S.S.G. § 2G1.1, a, c;
    - OL 28            x-ref to § 2A3.2, u, c;
- 2002, OL 23          U.S.S.G. § 2G1.1, a, c;
    - OL 33            x-ref to § 2A3.2, u, c, p;
- 2004, OL 35          U.S.S.G. § 2G1.3, u, c, s, p;
- 2007, OL 39          U.S.S.G. § 2G1.3, u, c, s, p;

The OL calculations do not include deductions for acceptance of responsibility. Section 2A3.2 is assigned to statutory rape offenses. The enhancements applied include age of

4

the minor ("a", +2), computer use ("c", +2), undue influence ("u", +2), sexual act ("s", +2), and pattern conduct ("p", +5). Also notable, § 2G1.1 started 5 offense levels higher if the offense included a minor as opposed to an adult from 2000 to 2003.

In 1987, if Mr. Leal pled guilty to the offense charged his offense level would have been 10 with a corresponding sentencing range of 0 to 6 months in prison. Today his offense level is 36 with a range of 188 to 235 months in prison for the same conduct. Nothing in the guidelines explains this dramatic increase. No fact involved in this case justifies this dramatic increase.

### c. Undue Influence, Computer Use, and Sexual Contact

The PSR guideline calculation includes three enhancements for conduct which is essentially inherent in an enticement offense. Mr. Leal and the complaining witness connected with each other through social media sites catering to adults interested in a specific fetish.[2] They eventually met in person and had a sexual relationship. Although perhaps applied properly, the conduct underlying these enhancements is typical in enticement cases and therefore contemplated in the base offense level.

The guideline suggests a 2 level enhancement if "a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct." U.S.S.G. § 2G1.3(b)(2)(B). The guideline creates a presumption of undue influence if the offender is 10 or more years older than the minor. U.S.S.G. § 2G1.3 cmt. n.3. The statute, however, would seem to find undue influence in every instance because it criminalizes all conduct where an adult "persuades, induces, entices," – influences – a child to engage in a prohibited sex act. It is difficult to conceive a violation of this statute which was based on the

---

[2] The fetish is labeled as "Ddlg". PSR ¶ 13. The Ddlg fetish encompasses dominant/submissive relationships between two individuals wherein one role-plays as the adult and the other as the child. *See* "What is Ddlg?", http://ddlginfo.com/what-is-ddlg.html. The relationships are not founded on the idea of sex with minors, incest, or pedophilia. *Id.*

5

proper level of influence rather than the undue. The Court should not consider the enhancement.

The guideline suggests a 2 level enhancement for the use of a computer. U.S.S.G. §2G1.3(b)(3)(B). This enhancement first appeared in the guidelines in 2000. Since then computers, cell phones, and the internet have become fixed and integrated parts of our society. Social interaction occurs through internet media on a far more prevalent basis than in-person contact. Violations of this statute in 2017 always involve computers and the internet, making this once novel fact the norm and not worthy of an enhancement.

The guideline also suggests a 2 level enhancement if the enticement included sexual contact. Every violation of this statute results in sexual contact if it involves a real minor person. The government does engage in sting operations which do not include actual minor persons and those charges would be expressed as attempts. In practice, cases which include real minor persons always have sexual contact. The occurrence of sexual contact is part of the actual offense – the culmination of the enticement - and should not be the basis for extra punishment.

Mr. Leal's conduct here is completely in line with the mine-run enticement charge. Defendants have contact with minors over the internet, they convince the minors to meet and have sex with them, and they do have sex with them. The enticement statute covers this conduct in the range of behavior it penalizes, and the base guideline offense level well contemplates this typical fact pattern.

d. Repeat and Dangerous Sex Offenders

The PSR applied a 5 level upward adjustment pursuant to U.S.S.G. § 4B1.5, entitled "Repeat and Dangerous Sex Offender Against Minors". The Sentencing Commission created this guideline section in 2000 to "effectuate[] the Commission's and Congress's intent to punish severely offenders who engage in a pattern of activity involving the sexual abuse or exploitation of minors". U.S.S.C. app. C, amend. 615

(reason for amendment). That initial version defined "pattern of activity" as sexual contact with two or more victims on two or more occasions. *Id.* The guideline targeted individuals considered to be child predators.

In 2003, however, pursuant to the PROTECT Act, the Commission expanded the pattern definition to include sexual contact with one victim on more than one occasion. U.S.S.G. app. C, amend. 649. An offender who has a relationship with one minor and has sexual contact with them on several occasions – someone who is not a predator - is now subject to this very significant enhancement.

Mr. Leal was involved with the complaining witness in this case in a sexual relationship over a five month period. They found each other on social media venues catering to a specific role-playing/fetish interest. Mr. Leal did not target the young girl, he did not kidnap her, and he did not force her to have sex with him. He is responsible, and criminally culpable, for statutory rape because she was not old enough to legally consent to engage in sexual contact. Mr. Leal is not, however, a child predator and not the type of offender the Commission had in mind when it created this adjustment.

e. Weighing the Advisory Guideline Range

The Court must consider the advisory guideline range when determining Mr. Leal's sentence, but cannot impose a sentence in that range if it does not reflect a reasonable sentence under 18 U.S.C. § 3553(a). Sentencing guidelines created by policy directives rather than the Commission acting in its institutional role deserve less weight in the Court's calculus. *See Kimbrough v. United States*, 552 U.S. 85, 100-02 (2007). The guidelines and enhancements here were created and increased repeatedly for policy reasons, not based on the study of empirical data measuring the impact of relevant sentencing practices. The advisory guideline range here is suspect and unreasonable as applied to Mr. Leal in his particular circumstances. The Court should not follow the suggested advisory range.

IV.     First Time Offender

Mr. Leal has no other contact with the criminal justice system. He showed very poor judgment by fostering a sexual relationship with an underage girl. Otherwise he has led a life that is inconsistent with a person dedicated to a criminal lifestyle. When establishing the Federal Sentencing Guidelines, Congress mandated that the United States Sentencing Commission "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, . . ." 28 U.S.C. § 994(j). The Commission attempted to apply that direction to the guidelines in several ways. First, it established the criminal history gradations to differentiate defendants based on their past criminal behavior or lack thereof. *See* U.S.S.G. § 4 (Criminal History and Criminal Livelihood). Category I of the guidelines criminal history assessment covers first time offenders because they would have no prior criminal contacts. The Commission also established a departure ground for aberrant behavior (*see* U.S.S.G. § 5K2.20) and the safety-valve adjustment (*see* U.S.S.G. § 5C1.2) to address first offenders. These applications, however, do not necessarily fulfill Congress's intent in 28 U.S.C. § 994(j). For example, criminal history category I applies to first time offenders as well as defendants with minor criminal contacts or dated uncounted convictions. The Court must consider Congress's counsel to impose non-jail sentences on first time offenders not convicted of crimes of violence or other serious felonies. 28 U.S.C. § 994(j). Here, the Court cannot impose a non-jail sentence because Mr. Leal committed a serious felony offense which carries a mandatory 10 year prison sentence. However, the Court can consider Mr. Leal's first time offender status and credit his prior good conduct by imposing the minimal prison sentence and mandatory sanction.

V. Disparate Treatment

Regardless of the Court's decision as to the length of his sentence, Mr. Leal will not serve his sentence like most inmates. Mr. Leal's conviction will render him subject to removal from the US and the Bureau of Prisons treats such alien inmates differently from citizens. Non-citizens are not afforded the same rehabilitation opportunities. They are often placed into private for-profit prisons rather than into BOP facilities. They cannot participate in any community confinement programs, work release, or half-way houses. They are not allowed to classify to the lowest security facilities. Most importantly, they face likely deportation - a life banishment sentence a citizen would never face. *See Jordan v. DeGeorge*, 341 U.S. 223, 232 (1951) (Jackson, J., dissenting). Significantly, Mr. Leal's deportation will separate him from his children. Essentially the BOP warehouses alien inmates in private prisons at a very high yearly cost for the length of their sentence only to be ultimately sent back to their home country. Mr. Leal faces all of these challenges in addition to his BOP incarceration. The Court must consider this inequitable punishment when determining Mr. Leal's sentence.

VI. A Minimally Sufficient Sentence

The law directs the Court to impose a sentence which is the least restrictive means to effect the purposes of sentencing, including just punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a) (the parsimony directive). Mr. Leal had sex with an underage girl. He committed statutory rape. The statute, § 2422(b), proscribes a mandatory prison sentence which is well in excess of what is necessary under § 3553(a). The advisory guidelines are more unreasonable. Mr. Leal was charged with third degree sex assault in RI State Court based on these facts and faced a maximum sentence of 5 years in prison. R.I. Gen. Laws § 11-37-6 & 7. That is coincidentally the same maximum sentence as § 2422 prior to 1996. The two statutes – the state offense and the federal offense – both attempt to protect minors and both

9

criminalize the same the conduct. Mr. Leal is equally culpable under each statute based on his conduct. The issue then is how to rationalize a guideline sentence of 15 to 19 years in prison which is 3 to 4 times greater than the maximum possible state sentence. Indeed, no facts exist to support such a sentence.

A 10 year prison sentence will severely punish Mr. Leal. He will also be deported after he completes his sentence. Time in custody beyond 10 years will not have any positive effect for the community or Mr. Leal, nor will it promote the purposes of sentencing under § 3553(a). Additional time in custody will only be wasteful warehousing at tax-payer expense.

VII. Conclusion

For all of these reasons Mr. Leal requests the Court follow this recommendation and sentence him to the mandatory minimum sentence of 10 years in prison.

> Respectfully submitted
> Rafael Leal
> By his attorney,
>
> /s/ Kevin J. Fitzgerald, 5775
> Assistant Federal Defender
> 10 Weybosset St., Ste. 300
> Providence, RI 02903
> (401) 528-4281
> FAX 528-4285
> kevin_fitzgerald@fd.org

CERTIFICATION

I hereby certify that a copy of this motion was delivered by electronic notification to John McAdams, Assistant United States Attorney, on November 1, 2017.

/s/ Kevin J. Fitzgerald